SHROPSHIRE *vs.* THE STATE OF GEORGIA.

[On account of providential cause, JACKSON, Chief Justice, did not preside in this case.]

On a trial for burglary, the fact that the goods were found in a room occupied by two or three or more persons, was not conclusive evidence that the goods were in the possession of any one of them.

(a.) Although this house was the house and home of the accused, yet the evidence showed the fact that it was also the home of others, who exercised exclusive dominion over a small portion thereof, and a charge which ignored this fact was not legal.

November 28, 1882.

Criminal Law. Charge of Court. Before Judge UN-DERWOOD. Floyd Superior Court. March Term, 1882.

Sim Pyles and Wyly Shropshire were indicted in Floyd superior court for burglary. The former pleaded guilty, and the latter pleaded not guilty, and was put upon his trial. On the trial, the evidence for the state was, in brief, as follows: The defendant, Sim Pyles, George Pyles and his wife, lived together in the house of defendant, in which there were three beds occupied by the respective parties. Defendant and Sim Pyles were seen together on the day before the burglary was committed. On the night of December 18, 1881, the store of one Selman, near Rome, Ga., was broken open and goods were stolen therefrom. On the succeeding day, one Moore, who appears to have been the sheriff of the county,

though it is not directly so stated, went to Shropshire's house to arrest Sim Pyles for the larceny of a horse. Not finding him, Moore arrested George Pyles, and on the next day returned to arrest Sim. The latter was already under arrest when Moore arrived, but was delivered up to him, together with two knives which had been taken from his person. On searching him, Moore found a third knife. He carried Sim to jail, and hearing of the burglary, exhibited the knives to Selman. They were identified by him, as was also a suit of clothes which Sim Pyles then wore. Moore went to the jail and asked Sim, " Who was with you and Wyly when you broke into that house?" The prisoner at first denied the burglary, but Moore retorted, " Yes, you did, and you have got Mr. Selman's clothes on now." The prisoner then said, " Yes, no one was along with me and Wyly when we broke into the house." He detailed the mode of entrance, and said that the balance of the goods were at Wyly Shropshire's in Alabama. Subsequently, Pyles retracted the statement that Shropshire was connected with the burglary, and refused to so state again. Upon recovering this information, Moore and Selman went to the house of defendant, which they reached about midnight, and at once arrested and handcuffed defendant. Under one of the beds in the room they found a sack, which they pulled out upon the floor. Defendant seemed to be excited, and said that there was nothing in the sack but some woman's clothes. But on opening it, there were found various articles of clothing, shoes, etc., belonging to Selman. Defendant then said he was mistaken in the sack, that it was another sack to which he referred. Some of the women present found afterwards an empty sack in which, they said, the clothes had been. None of the stolen goods were found on the person of the defendant, and he always denied complicity in the crime. On the day after Sim Pyles and the defendant were seen together, the latter was seen returning, accompanied by a woman and child, and carry-

ing a carpet bag and a white meal sack which appeared to be filled with something. When seen with Sim Pyles, he went in the direction of the place where his father and mother lived. He then had the carpet bag, but not the sack.

The evidence for the defendant was, in brief, as follows:

On December 17, defendant left his home in Alabama and came into Georgia to the house of his father and mother. Sim Pyles accompanied him a portion of the way, but parted from him during that day. Defendant slept at the house of his father, in Chattooga county, on the night of the burglary, and remained there all night. He had nothing to do with the burglary, and Sim Pyles was led to implicate him therein because Moore told Pyles it would go lighter with him, and rattled silver in his pocket as indicating that he would pay Pyles. (This was denied by Moore.) Pyles carried home the stolen property and put it under his brother's bed. Several persons lived in the same room.

The statement of defendant corroborated this evidence, and added that one object of his visit to his father was to carry a mid-wife to his house, where her presence was needed; that he carried her clothes in the carpet bag and the sack, and it was this sack that he thought had been pulled from under the bed; that he saw no more of Sim Pyles from the time they separated, on December 17, until they met in jail, and knew nothing of the burglary.

The jury found defendant guilty. He moved for a new trial on various grounds, of which the only material one is set out in the decision. The court overruled the motion, and defendant excepted.

WRIGHT, MEYERHARDT & WRIGHT, for plaintiff in error.

J. F. WRIGHT, solicitor general, by T. W. ALEXANDER, for the state.

CRAWFORD, Justice.

The plaintiff in error in this case was convicted of burglary, and possibly was guilty, but he moved for a new trial on several grounds, upon one of which, we think, it should have been granted.

The court was requested in writing to give the following charge to the jury: " The fact that goods were found in the room occupied by two, or three, or more persons, is not conclusive evidence that the goods were in the possession of any one of them." To this charge the judge added : " That is true, gentlemen, provided the occupants of the room all occupy it alike. But if the house was the house of one of the parties; if it was his house and his home, and he gives no explanation of it, then the law will treat it as his possession."

That goods found in a room occupied by two, or three, or more persons, is not *conclusive* evidence that they were in the possession of any one of them is, we think, a correct legal principle. It would certainly be a very stringent rule to put upon parties, to say that the mere fact that goods were found in a room occupied by several, was *conclusive* evidence that they were in the possession of any particular one of the occupants.

Numerous good and sufficient reasons exist why this should not be *conclusive*, and the accused was entitled to the charge as requested.

Nor do we think that the supplemental charge, under the testimony, was altogether legal. Although this house was the house and home of the accused, yet the evidence showed the fact, that it was also the home of others, and the exclusiveness of ownership and dominion over the small space to which those others exercised the right of possession and occupancy, should not have been so distinctly ignored by the judge.

Judgment reversed.